# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | William J. Hibbler | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 01 C 8182 | **DATE** | 4/26/2004 |
| **CASE TITLE** | UNITED STATES ex rel. GROSS vs. AIDS RESEARCH ALLIANCE, et al. | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

Defendants' Motion to Dismiss Gross' Second Amended Complaint (doc. #41)

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]
(2) ☐ Brief in support of motion due _____.
(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.
(4) ☐ Ruling/Hearing on _____ set for _____ at _____.
(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(7) ☐ Trial[set for/re-set for] on _____ at _____.
(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.
(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
    ☐ FRCP4(m) ☐ Local Rule 41.1 ☐ FRCP41(a)(1) ☐ FRCP41(a)(2).
(10) ■ [Other docket entry] Gross' Second Amended Complaint is DISMISSED WITH PREJUDICE. Defendants' request for attorney's fees is DENIED. Enter Memorandum Opinion and Order. All pending dates and motions are terminated as moot.

(11) ■ [For further detail see order attached to the original minute order.]

| | No notices required, advised in open court. | | | Document Number |
|---|---|---|---|---|
| | No notices required. | | number of notices | |
| | Notices mailed by judge's staff. | | | |
| | Notified counsel by telephone. | | APR 2 7 2004 date docketed | |
| ✓ | Docketing to mail notices. | | | 47 |
| ✓ | Mail AO 450 form. | | docketing deputy initials | |
| | Copy to judge/magistrate judge. | | | |
| JHC | courtroom deputy's initials | Date/time received in central Clerk's Office | date mailed notice mailing deputy initials | |

# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

SANFORD M. GROSS,

    Relator,

BRINGS THIS ACTION ON BEHALF OF
THE UNITED STATES OF AMERICA

John Ashcroft, Attorney General of the
United States,

    and

Scott Lassar, United States Attorney for
the Northern District of Illinois

    Plaintiffs,

v.

AIDS RESEARCH ALLIANCE-
CHICAGO, ROBERTA LUSKIN-HAWK,
THOMAS KLEIN, ROSS SLOTTEN,
NEEL FRENCH, PATRICIA DIXON and
CATHOLIC HEALTH PARTNERS

    Defendants.

**DOCKETED**

APR 2 7 2004

No. 01 C 8182

The Honorable William J. Hibbler

## MEMORANDUM OPINION AND ORDER

On November 13, 2002, relator, Sanford Gross, filed a *qui tam* action against Defendants, AIDS Research Alliance-Chicago, Roberta Luskin-Hawk, Thomas Klein, Ross Slotten, Neel French, Patricia Dixon, and Catholic Health Partners (collectively, "Defendants"), alleging that they violated the False Claims Act ("FCA"), 31 U.S.C. §§ 3729, *et seq*. Defendants moved to dismiss the complaint, and Gross subsequently withdrew it. On April 15, 2003, Gross filed an amended complaint, which Defendants again moved to dismiss. Upon Defendants' motion, this Court



dismissed Gross's amended complaint without prejudice for failing to meet the pleading requirements of Federal Rule of Civil Procedure ("FRCP") 9(b). *See United States ex rel. Gross v. AIDS Research Alliance-Chicago, et al.*, No. 01 C 8182, 2003 WL 22508153 (N.D. Ill. Nov. 3, 2003) (hereinafter *Gross I*). After obtaining leave from the Court, Gross filed a second amended complaint on November 24, 2003. Currently pending before this Court is Defendants' Motion to Dismiss Gross's Second Amended Complaint pursuant to Federal Rule of Civil Procedure 9(b), 12(b)(1), and 12(b)(6). For the reasons explained below, Defendants' motion is GRANTED.

I. **FACTUAL BACKGROUND**

Beginning in December 1998, Gross participated as a patient in a year-long study jointly sponsored by the Food and Drug Administration ("FDA") and the National Institutes of Health ("NIH") to investigate the effectiveness of a combination of drugs on HIV patients ("the Study"). NIH awarded Defendant AIDS Research Alliance-Chicago ("AIDS Research Alliance") approximately $3,700,000 to conduct the Study. The remaining Defendants worked with AIDS Research Alliance in the administration and oversight of the Study. Defendants were required to adhere to a number of federal regulations, namely 21 C.F.R. §§ 50, 56, and 312, and 45 C.F.R. §§ 46 and 74, which are aimed at protecting the rights and safety of human subjects involved in clinical investigations and research. Gross alleges that Defendants did not comply with these regulations because they failed to monitor the administration of the Study, maintain adequate records, and refrain from scientific misconduct. In addition, Gross alleges that Defendants' failures were reckless and/or intentional.

Defendant AIDS Research Alliance is a private, not-for-profit 501(c)(3) organization. AIDS Research Alliance was the site of the Study and admits, for the purposes of this motion, that it was

2

responsible for submitting to the government certain written reports as part of its compliance with the research grant, such as Financial Service Requests and PHS Form 398.[1] Gross alleges that AIDS Research Alliance, in violation of Study regulations, failed to record or report the adverse effects Gross experienced as a participant in the Study from April 1999 to December 1999. Furthermore, Gross claims that AIDS Research Alliance mismanaged the Study by allowing Gross's insurance carrier to be billed for Study-related expenses, losing files of Study participants and records of the Study, and instructing Gross to vary the daily dose amount of the Study drug while never requesting Gross's daily dose records of the drug.

Defendant Catholic Health Partners ("CHP") is a health network of hospitals, research institutes, and satellite medical offices. CHP acted as the Institutional Review Board for the Study and was responsible for preparing and submitting initial and continuing review records and consent forms to the government to certify of its compliance with the Study's regulations. Gross cites misconduct on the part of CHP and the other Defendants for allowing his viral load to increase unchecked during the Study and failing to inform him of the increase.

Defendant Roberta Luskin-Hawk was a Principal Investigator of the Study and a member of the administrative staff of AIDS Research Alliance and the faculty of CHP. As Principal Investigator, Luskin-Hawk was responsible for submitting to the government a DAIDS Investigator of Record Agreement, PHS Form 398, PHS Form 2590, and FDA Form 1572.[2] However, Gross alleges that Luskin-Hawk falsely certified compliance with the Study's regulations when she omitted

---

[1] Although neither party explains the exact nature of these documents, it is unnecessary to the resolution of Defendants' motion.

[2] *See* Footnote 1, *supra*.

the adverse effects of the Study in her submissions to the government. Gross also claims that Luskin-Hawk mismanaged the Study by allowing Gross's insurance carrier to be billed for Study-related expenses and losing control of Study records.

Defendants Thomas Klein, Ross Slotten, and Neel French were the participating physicians in the Study and responsible for submitting to the government a DAIDS Investigator of Record Agreement, FDA Form 1572, CPCRA Form 704, and Study records.[3] Gross alleges that these Defendants, like Luskin-Hawk, falsely certified compliance with the Study's regulations because they failed to include the adverse effects of the Study in their reports to the government. Gross claims that these Defendants also mismanaged the Study by losing files of Study participants, failing to keep track of Gross while he was a Study participant, and conducting incomplete examinations of Study participants.

Defendant Patricia Dixon was the Research Clinician and Nurse Coordinator for the Study and responsible for submitting to the government CPCRA Form 704 and Study records.[4] Gross alleges that Dixon falsely certified compliance with the Study's regulations when she failed to record or report the adverse effects of the Study experienced by Gross. He alleges that Dixon also mismanaged the Study by allowing Gross's insurance carrier to be billed for Study-related expenses, losing files of Study participants, conducting incomplete examinations of Study participants, and instructing Gross to vary the daily dose amount of the Study drug.

According to Gross, despite the aforementioned violations, Defendants certified their compliance with the applicable federal regulations. Therefore, Gross contends that Defendants'

---

[3]*See* Footnote 1, *supra*.

[4]*See* Footnote 1, *supra*.

failure to comply with the regulations in addition to their false certification of compliance amount to a false claim under the FCA.

## II. PROCEDURAL BACKGROUND

### A. The Court's Rulings in *Gross I*

Earlier in this litigation, this Court considered Defendants' Motion to Dismiss Gross's (first) Amended Complaint. The Court determined that Defendants were entitled to dismissal because Gross's complaint failed to meet the requisite level of specificity required under FRCP 9(b) to state a claim under the False Claims Act ("FCA"). *Gross I*, 2003 WL 22508153, at *2. The Court stated: "[i]n order to meet the requirements of FRCP 9(b), a plaintiff must plead the 'who, what, when and where of the fraud.'" *Id.* (quoting *United States ex rel. Garst v. Lockheed-Martin Corp.*, 328 F.3d 374, 376 (7th Cir. 2003)). Accordingly, Gross was required to "plead 'the identity of the person making the representation, the time, place and content of the misrepresentation and the method by which the misrepresentation was communicated.'" *Gross I*, 2003 WL 22508153, at *1 (quoting *Uni-Quality, Inc. v. Infotronx, Inc.*, 974 F.2d 918, 923 (7th Cir. 1992)).

Upon review of his complaint, the Court found that Gross failed to meet these requirements in the following ways. First, in his Amended Complaint, Gross made the conclusory allegation that Defendants knowingly failed to submit required forms to the government in order to maintain their funding. The Court found these allegations deficient under the heightened pleading standards of FRCP 9(b) because Gross did not allege any specific facts concerning the dates Defendants submitted these forms. *See Gross I*, 2003 WL 22508153, at *2. In addition, Gross insufficiently alleged that Defendants, in their administration of the Study, failed to comply with the governing regulations because Gross did not precisely detail what the failures were, who committed them, and

5

on what date. *Id.* at *3. Gross also failed to plead sufficient facts to demonstrate that Defendants had a motive to deceive the government when they certified compliance with the Study's regulations. *Id.* The Court found Gross's conclusory allegation that Defendants knowingly certified compliance insufficient to meet the pleading requirements of FRCP 9(b). On these grounds, the Court dismissed Gross's FCA claims against the individual Defendants. In addition, the Court dismissed Gross's claim that Defendants conspired to submit a false claim, because he failed to plead even the contours of the alleged conspiracy. Therefore, the Court granted Defendants' Motion to Dismiss Gross's (first) Amended Complaint.

The Court dismissed Gross's Amended Complaint without prejudice, and Gross subsequently obtained leave from the Court to file a second amended complaint against Defendants. In his Second Amended Complaint, Gross attempts to address the deficiencies in his Amended Complaint by incorporating the following changes.

**B.  Gross's Second Amended Complaint**

Gross made several changes in his Second Amended Complaint in an attempt to remedy the deficiencies in his first amended complaint. First, Gross included the names of the forms and the defendant responsible for submitting each form. *See* Relator's Sec. Amend. Compl. at ¶66. Second, Gross supplemented his allegations that Defendants engaged in misconduct in violation of the Study by matching specific defendants with the alleged misconduct and pinpointing the date or relevant time period in which the misconduct occurred. *See id.* at ¶¶70, 120, 126, 130, and 135. Third, Gross incorporated thirty-six additional paragraphs in an attempt to establish Defendants' motive for deceiving the government when they allegedly falsely certified their compliance with the Study's regulations. *See generally id.* at ¶¶ 80-116. In his attempt to prove motive, Gross claims Defendants

knew that they did not and could not comply with the terms of the Study due to "existing non-compliance and inadequacy of its review and oversight procedures." *Id.* Gross then goes on to detail Defendants' allegedly existing noncompliance with various regulations at the time they certified compliance with the Study's terms. *Id.*

Gross also attaches as an exhibit to his Second Amended Complaint, a December 9, 2002 warning letter issued by the FDA to Defendant CHP that cites various regulatory violations found after the FDA's inspection of CHP's Institutional Review Board. Gross states that the findings cited in this letter "are not specific to the Study at the center of this litigation, but go beyond and implicate other federal research studies." *See* Relator's Sec. Amend. Compl. ¶ 139. Gross pleads no additional facts to support his claim of conspiracy against Defendants.

Despite Gross's modifications to his FCA claims against the individual Defendants in his Second Amended Complaint, Defendants claim that Gross again fails to meet the pleading requirements of FRCP 9(b) and that Gross's Second Amended Complaint should be dismissed on that ground. Alternatively, Defendants request that the Court dismiss Gross's Second Amended Complaint pursuant to FRCP 12(b)(1) or FRCP 12(b)(6). Notwithstanding Gross's claim of conspiracy, *see infra* Part IV.(C.), the Court finds that in light of the above-detailed modifications to Gross's Second Amended Complaint, Gross has sufficiently pled the "who, what, when and where" of his FCA claims against the individual Defendants. Nevertheless, although Gross has overcome the FRCP 9(b) pleadings hurdle, his claims require dismissal under Rule 12(b)(1) for lack of subject matter jurisdiction and Rule 12(b)(6) for failure to state a claim upon which relief can be granted.

## III. LEGAL STANDARD

In considering Defendants' Motion to Dismiss Gross's Second Amended Complaint for lack of subject matter jurisdiction under FRCP 12(b)(1) and for failure to state a claim upon which relief can be granted under FRCP 12(b)(6), the Court must accept as true the complaint's well-pleaded facts and allegations and draw all reasonable inferences from those allegations in Gross's favor. *See Transit Exp., Inc. v. Ettinger*, 246 F.3d 1018, 1023 (7th Cir. 2001) (FRCP 12(b)(1)); *Gillman v. Burlington Northern R. Co.*, 878 F.2d 1020, 1022 (7th Cir. 1989) (FRCP 12(b)(6)). In testing the sufficiency of Gross's complaint, the Court will dismiss it under FRCP 12(b)(6) only if it appears that Gross can prove no set of facts that would entitle him to relief. *Conley v. Gibson*, 335 U.S. 41, 45-46 (1957). If Gross's *qui tam* claims do not satisfy the jurisdictional requirements of the FCA, the Court will dismiss them for lack of subject matter jurisdiction under FRCP 12(b)(1). *See United States v. Bank of Farmington*, 166 F.3d 853, 859 (7th Cir. 1999).

## IV. DISCUSSION

### A. The False Claims Act

#### 1. Knowledge requirement

The FCA imposes liability on any person who

> (1) knowingly presents or causes to be presented to an officer or employee of the United States Government . . . a false or fraudulent claim for payment or approval;
> (2) knowingly makes, uses or causes to be made or used, a false record or statement to get a false or fraudulent claim paid or approved by the Government;
> (3) conspires to defraud the Government by getting a false or fraudulent claim allowed or paid[.]

31 U.S.C. §§ 3729(a)(1)-(3). A person acts knowingly if she "(1) has actual knowledge of the information; (2) acts in deliberate ignorance of the truth or falsity of the information; or (3) acts in

reckless disregard of the truth or falsity of the information[.]" 31 U.S.C. § 3729(b). Accordingly, the Seventh Circuit has held that to bring a cause of action under the FCA, a plaintiff must establish three elements: "(1) the defendant made a record or statement in order to get the government to pay money; (2) the record or statement was false or fraudulent; and (3) the defendant knew it was false or fraudulent." *United States ex rel. Lamers v. City of Green Bay*, 168 F.3d 1013, 1018 (7th Cir. 1999) (construing 31 U.S.C. § 3729(a)(2)).

Furthermore, as the Court stated in *Gross I*, "[w]here plaintiffs rely on technical violations to support a false certification FCA claim, the Seventh Circuit has required them to demonstrate some motive for the alleged deception." 2003 WL 22508153, at *3 (citing *Lamers*, 168 F.3d at 1019). In *Lamers*, the *qui tam* plaintiff alleged that the defendant violated the FCA when it misrepresented its compliance with the federal regulations at issue because it knew that one of its companies was committing ongoing violations. *See Lamers*, 168 F.3d at 1019. The *Lamers* court pointed out that in order for it to infer from the plaintiff's reliance on "a handful of technical violations" that the defendant intended to deceive the government, the defendant must have some motive for the alleged deception. *Id.* The court then determined that the defendant had no financial motive to violate the regulations because the alleged violations were not cost-saving. *Id.* Thus, where plaintiffs rely on technical violations to support a false certification FCA claim, they must demonstrate some motive for the alleged deception. *Id.*

This Court has interpreted the motive requirement to mean that plaintiffs must point to specific facts that show that at the time the defendant certified compliance it had no intention of complying with the applicable regulations or at least had a motive not to comply with the regulations. *See Gross I*, 2003 WL 22508153, at *3. If the plaintiff cannot make such a showing, the defendant's

failures to comply with the applicable regulations amount to no more than ordinary negligence, which will not support an FCA claim. *Id.* In the instant matter, Gross cites various regulatory violations committed by Defendants under Titles 21 and 45 of the Code of Federal Regulations to support his FCA claim. Based on the knowledge requirement set out in the FCA and elucidated by the Seventh Circuit in *Lamers*, Gross must show that when Defendants represented their compliance to the government despite their regulatory violations, they had some motive for the alleged deception. As stated in *Lamers*, the FCA is a fraud prevention statute, not a means for policing regulatory compliance. *See Lamers*, 168 F.3d at 1020. Therefore, a defendant's violations of applicable federal regulations are not fraud under the FCA unless the defendant knowingly lies to government about them. *See id.*

### 2. Jurisdictional bar

The Court's jurisdiction to hear FCA claims is limited by the following provisions:

(A) No court shall have jurisdiction over an action under this section based upon the public disclosure of allegations or transactions in a criminal, civil, or administrative hearing, in a congressional, administrative, or Government Accounting Office report, hearing, audit, or investigation, or from the news media, unless the action is brought by the Attorney General or the person bringing the action is an original source of the information.

(B) For purposes of this paragraph, "original source" means an individual who has direct and independent knowledge of the information on which the allegations are based and has voluntarily provided the information to the Government before filing an action under this section which is based on the information.

31 U.S.C. §§ 3730(e)(4)(A)-(B). These sections "compor[t] with the FCA's broader goal of encouraging lawsuits based on information that is not available to the public, and thus not available to the governmental authorities with direct responsibility for the claim in question." *United States ex rel. Feingold v. AdminaStar Fed., Inc.*, 324 F.3d 492, 495 (7th Cir. 2003). The FCA's

10

jurisdictional bar is invoked "only if the information upon which the *qui tam* claim is based has been publicly disclosed and the plaintiff was not the original source of the information." *Bank of Farmington*, 166 F.3d at 859. Thus, the Court determines whether it may hear an FCA claim by considering: "(1) whether the relator's allegations have been publicly disclosed; (2) if so, whether the lawsuit is 'based upon' such public disclosures; and (3) if so, whether the relator is an 'original source' of the information contained within the public disclosures." *Feingold*, 324 F.3d at 495 (citing *Bank of Farmington*, 166 F.3d at 859).

### B. Gross's FCA Claims Against the Individual Defendants

As stated above, in Gross's Second Amended Complaint he alleges that each of the Defendants had a motive to falsely certify compliance with the regulations governing the Study because they knew they did not and could not comply with the terms of the Study due to existing non-compliance in their procedures and inadequacy of their review and oversight procedures. Gross then cites various instances of Defendants' noncompliance that allegedly existed at the time they certified compliance with the Study's regulations.

#### 1. Catholic Health Partners

Gross alleges that Defendant CHP falsely certified compliance with the Study's regulations when it failed to prepare and maintain adequate records and reports and properly monitor the administration of the Study. To establish CHP's motive to deceive the government when it certified compliance with the Study's regulations, Gross details numerous examples of CHP's alleged existing noncompliance. As explained above, Gross also attaches to his complaint a 2002 warning letter issued by the FDA to CHP that cites various regulatory violations committed by CHP. Defendants argue that Gross's claims against CHP should be dismissed for lack of subject matter jurisdiction

11

pursuant to FRCP 12(b)(1) because his claims are based on information in the FDA warning letter, which Defendants contend is a public disclosure.

The Court begins its jurisdictional inquiry by first determining whether Gross's allegations against CHP have been publicly disclosed. As articulated by the Seventh Circuit in *Feingold*, "the purpose of a public disclosure is to alert the responsible authority that fraud may be afoot[.]" 324 F.3d at 496. The administrative reports at issue in *Feingold* were determined to be publicly disclosed "because, by their very nature, they establish the relevant agency's awareness of the information in those reports." *Id.* In the present matter, the FDA was the "governmental authorit[y] with direct responsibility for the claim in question," *see id.* at 495, and the FDA issued the warning letter cited by Gross. Therefore, the FDA's letter is a public disclosure because it establishes the agency's awareness of the information that substantiates Gross's allegation of fraud against CHP.

The Court must next determine if Gross's claims are based upon the publicly disclosed, FDA warning letter. *See id.* "If the public disclosure from which the information is actually derived is essential to a *qui tam* claim, then the claim is based upon the public disclosure for the purposes of the jurisdictional bar." *Bank of Farmington*, 166 F.3d at 863. The portion of Gross's complaint where he seeks to establish that CHP had a motive to deceive the government highlights CHP's noncompliance with the regulations of other federal grants. These instances of noncompliance cited by Gross are nearly identical to the violations detailed by the FDA in its warning letter to CHP. In addition, Gross does not allege that the information in his complaint was based upon another source. Therefore, Gross's claims appear to have been based upon the findings in the FDA warning letter. Furthermore, as in *Bank of Farmington*, the information derived from the FDA letter is essential to Gross's claim that CHP had a motive to falsely certify compliance with the Study's regulations due

to existing noncompliance with other regulations. *See Bank of Farmington*, 166 F.3d at 864 (finding that the relator's knowledge was not independent of the public disclosure because her claim was factually and substantially based upon it).

Although Gross's claims against CHP are based upon a public disclosure, he can still avoid the FCA's jurisdictional bar if he establishes that he is the original source of the information that supports his claims against CHP. *See id.* at 864. As defined by Section 3230(e)(4)(B) of the FCA, Gross is an original source if he "has direct and independent knowledge of the information on which the allegations are based and voluntarily provided that information to the Government before filing his action[.]" However, Gross does not allege that he is the "original source" of the information, and he makes no attempt to show that he meets either of the criteria for an "original source." In addition, a review of the record reveals no facts to show how, as a patient in the Study, Gross could have direct and independent knowledge of violations committed by CHP's Institutional Review Board.

Because Gross's claims against CHP were based upon information contained in a public disclosure and Gross failed to establish that he was an original source of the information on which his allegations are based, the Court must dismiss Count VII of Gross's Second Amended Complaint against CHP for lack of subject matter jurisdiction under FRCP 12(b)(1).

### 2. Roberta Luskin-Hawk

Gross next claims that Defendant Luskin-Hawk falsely certified compliance with the Study's regulations when she failed to: (a) report adverse effects of the Study in her submissions to the government; (b) properly monitor the activities of Defendant Patricia Dixon; and (c) adequately maintain the records of the Study participants. Gross tries to establish that Luskin-Hawk had a motive to falsely certify compliance with the Study's regulations by asserting that at the time of

certification, she "knew she was unable to provide the minimum requirement of time required of her to participate in the Study, approximately 50% [and] she knew she was overextended in terms of time commitments." In addition, Gross claims that Luskin-Hawk "knew she lacked the proper research administration resources to comply with the terms of the Study."

Although Gross generally refers to both "federal regulations governing the duties of a Principal Investigator" and "terms of the Study," he cites no specific provision violated by Luskin-Hawk that would evidence "existing noncompliance or inadequacy of [her] review and oversight procedures." Nor do the sections of the Code of Federal Regulations cited by Gross throughout his complaint contain a provision that either requires principal investigators to adhere to a minimum time commitment or details proper research administration resources. Because Gross has not specified facts that show Luskin-Hawk was actually in noncompliance with a particular regulation, he cannot show that this defendant had a motive to deceive the government when she certified compliance with the Study's regulations. Without evidence of such a motive, Luskin-Hawk's alleged regulatory violations are insufficient to support Gross's FCA claim. Therefore, Gross has failed to state a claim upon which relief can be granted, and the Court will dismiss Count II of Gross's Second Amended Complaint against Luskin-Hawk pursuant to FRCP 12(b)(6).

### 3. AIDS Research Alliance, Thomas Klein, Ross Slotten, Neel French and Patricia Dixon

Gross addresses the remaining Defendants together – AIDS Research Alliance, Thomas Klein, Ross Slotten, Neel French, and Patricia Dixon, referring to them collectively as "Study Site Defendants," in his attempt to establish their motive to falsely certify compliance with the Study's

regulations. Similar to the allegations made against Defendant Luskin-Hawk, Gross alleges that each of the Study Site Defendants misrepresented their compliance with the Study's regulations when they omitted the adverse effects of the Study in their submissions to the government. He alleges that these Defendants also mismanaged the Study by failing to properly monitor the Study and adequately maintain records of the Study participants.

According to Gross, the Study Site Defendants had a motive to falsely certify compliance with the Study's regulations because they knew that Defendant Dixon could not properly administer the Study, and they knew there were no procedures in place to monitor Dixon's activities. In support of this allegation of motive, Gross generally cites similar types of "noncompliance" alleged for Luskin-Hawk, claiming that the Study Site Defendants knew they were overextended in terms of other commitments and lacked the proper research infrastructure to comply with the terms of the Study. However, Gross does not cite a particular regulation that the Study Site Defendants were violating when they certified compliance. Therefore, he cannot show that these Defendants had a motive to deceive the government when they certified compliance with the Study's regulations, and his FCA claims against them cannot be sustained. Accordingly, pursuant to FRCP 12(b)(6), the Court dismisses Counts I, III, IV, V and VI against Defendants AIDS Research Alliance, Thomas Klein, Ross Slotten, Neel French, and Patricia Dixon, respectively.

### C.  Gross's Conspiracy Claim

In his Second Amended Complaint, Gross simply claims, without support, that "Defendants combined and conspired, and committed the acts described [in the complaint] for the purpose of justifying receipt of federal funds already received and to induce payment of additional federal funds." *See* Relator's Sec. Amend. Compl. ¶ 162. In considering a claim of conspiracy alleged under

15

the FCA, general civil conspiracy principles apply. *U.S. ex rel. Durcholz v. FKW, Inc.*, 189 F.3d 542, 545 n.3 (7th Cir. 1999). The principal element of civil conspiracy "is an agreement between the parties to inflict a wrong against or injury upon another, and an overt act that results in damage." *See Scherer v. Balkema*, 840 F.2d 437, 441 (7th Cir. 1988).

In Gross's Response to Defendants' Motion to Dismiss, he argues that he has sufficiently pled a conspiracy claim because he alleges that each of the Defendants knew of the other's violations and protected one another "by not blowing the whistle on each other." His response ignores the fact that he has failed to plead the main elements of a conspiracy claim: the existence of an agreement between Defendants and an overt act. The alleged inaction of the individual Defendants, refraining from "whistle blowing," is not an overt act. In light of these deficiencies, Gross fails to state a claim upon which relief can be granted. Accordingly, the Court will dismiss Gross's conspiracy claim, Count VIII, pursuant to FRCP 12(b)(6).

### D. Attorneys' Fees

Defendants request attorneys' fees pursuant to Section 3730 of the FCA, which permits the Court to award a defendant reasonable attorneys' fees when the defendant prevails and the Court finds the plaintiff's claim frivolous, vexatious, or made for purposes of harassment. Defendants also request relief pursuant to 28 U.S.C. § 1927, which allows the Court to order an attorney who "multiplies the proceedings in any case unreasonably and vexatiously" to personally pay the opposing party's attorneys' fees and costs.

Defendants are not entitled to relief on either ground. The Court does not find that Gross has acted to harass Defendants or that Gross's counsel vexatiously multiplied the proceedings. Nor does the Court find that Gross's claim was frivolous or vexatious, as the Court granted Gross leave to file

a second amended complaint after dismissing his first amended complaint without prejudice. Therefore, Defendants' request for attorneys' fees is DENIED.

## IV.  CONCLUSION

For the reasons set forth above, Gross's Second Amended Complaint is DISMISSED WITH PREJUDICE. Defendants' request for attorneys' fees is DENIED.

IT IS SO ORDERED.

4/26/04
Dated

The Honorable William J. Hibbler
United States District Court

17